# LEASE AGREEMENT

In consideration of the covenants set forth below, Landlord (as hereinafter defined) hereby leases to Tenant (as hereinafter defined), and Tenant hereby leases from Landlord, the Premises (as hereinafter defined) upon the following terms and conditions:

## ARTICLE I - FUNDAMENTAL LEASE PROVISIONS

**Date:** August 1, 2016

**Landlord:** RICHARD MCCORMICK ENTERPRISES LLC, an Ohio limited liability company

**Tenant:** FMI ENTERPRISES, LLC, an Ohio limited liability company

**Lease Term:** Commencing on the date hereof (the "Commencement Date") and continuing for a two (2) year period thereafter, until July 31, 2018, unless sooner terminated as provided herein.

**Addresses for Notices:**

To Landlord: Richard McCormick Enterprises LLC

_____

_____

Attention:

To Tenant: FMI Enterprises, LLC
3637 Lacon Road
Hilliard, Ohio 43026
Attn: Michael Stemen

With a Copy To: Dinsmore & Shohl, LLP
Attn: Don Leach, Esq.
191 W. Nationwide Blvd.
Suite 300
Columbus, OH 43215

**Premises:** The Premises: 9 Broadway Street, Wapakoneta, OH 45895, as further set forth and depicted on the attached Exhibit "A" hereto and made a part hereof.

**Property:** The Property shall be the entire building and all related structures surrounding the Premises, if not otherwise apart thereof, and all grounds, parking spaces, sidewalks and other


EXHIBIT A

common areas appended to the same, and as shall be further set forth and depicted on the attached Exhibit "B" hereto and made a part hereof.

References in this Article 1 to other Articles are for convenience and designate some of the other Articles where references to the Fundamental Lease Provisions appear. Each reference in this Lease to any of the Fundamental Lease Provisions contained in this Article 1 shall be construed to incorporate all of the terms provided under such Fundamental Lease Provision. In the event of any conflict between any Fundamental Lease Provision and the balance of this Lease, the latter shall control.

## ARTICLE 2 - EXHIBITS

The following are attached hereto as Exhibits and made a part of this Lease:

EXHIBIT A    --    Description of the Premises

EXHIBIT B    --    Description of the Property

In the event of any conflict between the above-referenced Exhibit and the balance of this Lease, the Exhibit shall control.

## ARTICLE 3 - LEASE OF PREMISES

3.01 Lease of Premise. Landlord hereby leases and demises unto Tenant and Tenant hereby leases and takes from Landlord, for the term, at the rental, and upon the terms, covenants, and conditions hereinafter set forth, the property referred to in Article 1 as the Premises and described on Exhibit A attached hereto.

## ARTICLE 4 - TERM

4.01 Lease Term. The initial term of this Lease shall be the Initial Lease Term specified in Article 1 hereof.

## ARTICLE 5 – INTENTIONALLY DELETED

## ARTICLE 6 - RENT

6.01 Rent. Landlord and Tenant covenant and agree that all rent due and owing in consideration for the lease of the Premises has been paid in full. So long as Tenant remains in compliance with the terms of this Lease, Tenant shall not owe any further sums to Landlord for the leasehold interest conveyed hereunder.

6.02 Gross Lease. Except with respect to the obligation for utilities in accordance with Article 8, maintenance of the Premises in accordance with Article 9, and the payment for insurance to be carried by Tenant in accordance with Article 10, this Lease is intended to be a "gross lease." Accordingly, the Rent recited in Section 6.01 above shall be inclusive of all other costs and

expenses for, by way of example but not intended to be an inclusive list of: (i) liability or casualty insurance carried by Landlord related to the Premises; (ii) real estate taxes and assessments; (iii) all utilities servicing the Premises; (iv) snow removal and lawn maintenance; and (v) any other common area and operating expenses, operating charges, maintenance charges, or any other charges, costs and expenses which arise or may be contemplated under any provision of this Lease during the term hereof. Landlord shall be responsible for and shall pay, prior to the assessment of any interest or penalties, all taxes assessed against the Premises or Property.

## ARTICLE 7 - USE OF THE PREMISES

7.01 Use.

(a) Tenant shall, at Tenant's sole expense, fully comply with all present and future laws, ordinances, orders, rules, regulations, of any governmental authorities and with any directive of any public officer which shall impose any obligation, order or duty upon Landlord or Tenant with respect to the use or occupation of the Premises (but not the design or structure thereof), including, without limit, any governmental law or statute, rule, regulation, ordinance, code, policy or rule of common law, now or hereafter in effect relating to the environment, health or safety.

(b) Tenant shall not use or permit the Premises to be used in any manner which will result in waste or the creation of a nuisance, and Tenant shall maintain the Premises free of any objectionable noises, odors, or disturbances.

## ARTICLE 8 - UTILITIES

8.01 Utilities. On or before the Commencement Date, Tenant shall make arrangements with appropriate utility or service companies for its own service for any utilities and/or services which are to serve the Premises exclusively or directly and which can be billed to Tenant directly, and Tenant shall promptly pay all costs with respect to same, such payments to be made, to the extent possible, directly to the utility or service provider or to the appropriate party charged with collecting the same, the foregoing to include all charges for such utilities or services.

## ARTICLE 9 - MAINTENANCE AND REPAIRS

9.01 Tenant's Obligations.

(a) Tenant shall maintain the Premises in good condition and repair and make any and all necessary and prudent repairs to all or any portion of the Premises, and make all necessary replacements, restorations, renewals and repairs to the Premises; repairs, restorations, renewals and replacements shall be at least equivalent in quality to the original work or the property replaced, as the case may be.

(b) Tenant shall provide janitorial services for the Premises, at its own expense, and ensure the proper storage, disposal and removal of all trash, debris and other waste materials generated upon the Premises;

(c) Tenant shall not commit any waste upon or about the Premises;

(d) Tenant shall keep the Premises secure at all times and shall be solely responsible for any loss or damage to the Premises suffered by Landlord and arising out of Tenant's sole failure to do so; provided, however, that Tenant's responsibility for any such loss or damage shall be subject to the provisions of Section 10.02 hereof; and

(e) Upon the expiration or earlier termination of this Lease, Tenant shall return the Premises to Landlord clean and in the same condition as of the commencement of the Lease Term, except for normal wear and tear and any casualty involving the Premises.

9.02 <u>Landlord's Obligation</u>: Landlord, during the Lease Term, shall provide the following services:

(i) the repair, maintenance and replacement (when necessary or appropriate) of the structural components of the Premises including the structural walls, concrete floors and roof, and the mechanical systems serving the Building (including, without limitation, the heating air conditioning, electrical, plumbing and sanitary sewer); provided, however, that notwithstanding anything to the contrary contained herein, the cost of replacing (as opposed to maintaining and repairing) the structural components of the Premises and the Building (including the roof) shall not be otherwise charged to Tenant, and provided further that the cost of any repair of the structural components of the Premises and the Building which is required as a result of any structural defect therein shall also not be charged to Tenant. Landlord shall not be liable for damages caused by its failure to make any such repair or replacement, provided that Landlord has used reasonable efforts to attempt to have such repair or replacement made, after having been notified by Tenant that such repair or replacement must be made promptly and that Tenant will be damaged by the failure to make such repair or replacement promptly;

(ii) the maintenance of the landscaping on the Land;

(iii) the maintenance, repair and replacement of the common areas, including, without limitation, the parking areas, driveways, and walkways located on the Land;

(iv) the insurance which Landlord is required to maintain on the Property pursuant to Article 10 below; and

(v) parking and common area lighting.

## ARTICLE 10 - INSURANCE

10.01 <u>Tenant's Insurance Obligation</u>. Tenant covenants and agrees that from and after taking possession of the Premises, Tenant shall carry and maintain, at its sole cost and expense, the following types of insurance, in the amounts specified and in the form hereinafter provided for:

17-32318-maw    Doc 17-2    FILED 08/19/17    ENTERED 08/19/17 01:36:05    Page 4 of 14

(a) Insurance covering all of Tenant's equipment, trade and other fixtures, and personal property from time to time in, on or upon the Premises, in an amount determined by Tenant, providing protection against any peril included within the classification "All Risk".

(b) Tenant's obligations to carry the insurance provided for above may be brought within the coverage of a so-called blanket policy or policies of insurance carried and maintained by Tenant. Landlord, any superior landlord and any mortgagee or beneficiary of Landlord shall be named as an additional insured thereunder as their interests may appear, and that the coverage afforded Landlord will not be reduced or diminished by reason of the use of such requirements set forth herein are otherwise satisfied. Tenant agrees to provide Landlord with a copy of all such insurance policies.

10.02 <u>Subrogation Waiver</u>. Landlord (for itself and its insurer) hereby waives any rights, including rights of subrogation, and Tenant (for itself and its insurer) hereby waives any rights, including rights of subrogation, each may have against the other on account of any loss or damage occasioned to Landlord or Tenant, as the case may be, to their respective property, the Premises or its contents that are caused by or result from risks insured against under any insurance policies carried by the parties hereto and in force at the time of any such damage. The foregoing waivers of subrogation shall be operative only so long as available in the jurisdiction where the Premises are located and so long as no policy of insurance is invalidated thereby.

10.03 <u>Landlord's Insurance Covenant.</u> Landlord covenants and agrees that, during the Lease Term, it shall obtain all risk insurance against damage by fire or other casualty in an amount at least equal to the replacement cost of the Premises as determined from time to time by Landlord or (at Landlord's election or upon Tenant's request) by appraisal made at the expense of Tenant by an accredited insurance appraiser approved by Landlord.

## ARTICLE 11 - IMPROVEMENTS

11.01 <u>Permitted Improvements</u>. Subject to the conditions set forth in this Article 11 below, Tenant may from time to time make alterations, replacements, additions, changes, and improvements in and to the Premises as it may find necessary or convenient for its purposes (both the construction and additional work thereafter shall collectively be referred to in this Lease as "<u>Improvements</u>"); provided, however, that no such Improvements shall decrease the value of the Premises and must be done in a good and workmanlike manner, using first-class materials. Tenant agrees to make application for any building permit. Tenant shall maintain the Premises in first-class condition at all times during the Term of this Lease and any extensions or renewals thereof.

11.02 <u>Liens</u>. Tenant shall pay the costs of any Improvements done on the Premises pursuant to Sections 11.01, and shall keep the Premises free and clear of liens of any kind. Tenant shall indemnify and defend Landlord from and against any liability, loss, damage, costs, attorneys' fees, and any other expense incurred as a result of claims of lien by any person performing work or furnishing materials or supplies for Tenant or any person claiming under Tenant. Before the

FMI ENTERPRISES
Lease Agreement for 9 Broadway, Wapakoneta
10584512v1

5

17-32318-maw    Doc 17-2    FILED 08/19/17    ENTERED 08/19/17 01:36:05    Page 5 of 14

actual commencement of any work for which a claim of lien may be filed, Tenant shall give Landlord notice of the intended commencement date at least ten (10) days before said date to enable Landlord to post notices of non-responsibility or any other notices which Landlord deems necessary for the proper protection of Landlord's interest in the Premises and Landlord shall have the right to enter the Premises and post such notices at any reasonable time.

11.03 General Conditions Relating to Improvements. Any Improvement, structural or otherwise, to or on the Premises, shall be subject to the following conditions:

(a) No Improvement shall be undertaken until Tenant shall have paid for and received all required permits and authorizations of all municipal departments and governmental subdivisions having jurisdiction.

(b) Any Improvement involving an estimated cost of more than One Hundred Thousand Dollars ($100,000.00) shall be conducted under the supervision of a licensed architect or engineer selected by Tenant and shall be made in accordance with detailed plans and specifications (the "Plans and Specifications") and cost estimates prepared by such architect or engineer and approved in writing in advance by Landlord.

(c) Any Improvement shall be made promptly and in a good workmanlike manner and in compliance with all applicable permits and authorizations and building and zoning laws and all laws and in accordance with the orders, rules and regulations of the Board of Fire Insurance Underwriters and any other body hereafter exercising similar functions having or asserting jurisdiction over the Premises.

(d) No Improvement shall tie-in or connect the Premises or any improvements thereon with any property outside the Premises without the prior written consent of Landlord.

(e) No Improvement shall reduce the value of the Premises.

## ARTICLE 12 - DAMAGE, DESTRUCTION, OBLIGATION TO REBUILD

12.01 Option to Rebuild. If any portion of the Premises or of Tenant's Improvements are damaged or destroyed by fire or other casualty, Tenant shall forthwith give notice thereof to Landlord. Landlord shall then have the option, at Landlord's discretion and Landlord's sole costs and expense, to repair, restore, rebuild or replace the damaged or destroyed portion of the Premises, Improvements, fixtures or equipment, and complete the same as soon as reasonably possible. Notwithstanding the foregoing, in the event that the Premises are either totally destroyed or damaged to the extent that repairs thereof will take more than six (6) months to complete, then either party hereto may terminate this Lease by giving written notice to the other within sixty (60) days after the date of the occurrence of such damage or destruction.

## ARTICLE 13 - EMINENT DOMAIN

13.01 Total Taking. If the entire Premises is taken under the power of eminent domain by any public or quasi-public authority, this Lease shall terminate and expire as of the date of such taking.

17-32318-maw    Doc 17-2    FILED 08/19/17    ENTERED 08/19/17 01:36:05    Page 6 of 14

13.02  Partial Taking.  In the event that (a) more than twenty-five percent (25%) of the floor area of the Premises is taken under the power of eminent domain by any public or quasi-public authority; or (b) by reason of any appropriation or taking, regardless of the amount so taken, the remainder of the Premises is not one undivided parcel of property; or (c) as a result of any taking, regardless of the amount so taken, the remainder of the Premises is rendered unsuitable for the continued operation of Tenant's business, Tenant shall have the right to terminate this Lease as of the date Tenant is required to vacate a portion of the Premises, upon giving notice in writing of such election within thirty (30) days after receipt by Tenant from Landlord of written notice that said Premises has been so appropriated or taken. Landlord agrees immediately after learning of any appropriation or taking to give to Tenant notice in writing thereof. If Tenant instead elects not to terminate this Lease, Tenant shall remain in that portion of the Premises. So long as this Lease is not terminated in the manner provided above, there shall be an equitable adjustment of the rent pre-paid by Tenant hereunder by reason of such partial taking.

## ARTICLE 14 - ASSIGNMENT AND SUBLETTING

14.01  Landlord's Consent Required.  For purposes of this Article 14, the terms "assign" and "assignment" shall include and mean any act attempting to, or document purporting to, assign, transfer, sublet, enter into license or concession agreements for, change ownership of, mortgage or hypothecate this Lease or Tenant's interest in and to the Premises or any part thereof. Tenant shall not assign this Lease or Tenant's interest in and to the Premises without obtaining the prior written consent of Landlord. Notwithstanding the foregoing, Tenant has the right to assign its interest under this Lease or to sublease all or any part of the Premises to: (a) any Affiliate; or (b) any successor corporation or other entity resulting from a merger or consolidation of Tenant; or (c) any purchaser of all or substantially all of Tenant's assets. Tenant shall deliver a copy of the assignment or sublease documents to Landlord within 30 days after each such transaction. For purposes of this Lease, "Affiliate" means any entity which controls, is controlled by, or is under common control with Tenant.

## ARTICLE 15 - SUBORDINATION

15.01  Subordination.  This Lease, at Landlord's option, shall be subordinate to any mortgage or any other hypothecation or security now or hereafter placed upon the Premises (each, without distinction, a "Mortgage") and to any and all advances made on the security thereof and to all renewals, modifications, consolidations, replacements, and extensions thereof.

15.02  Attornment.  Tenant shall attorn to and recognize any purchaser at a foreclosure sale under any Mortgage, any transferee who or which acquires the Premises by deed in lieu of foreclosure, and their successors and assigns, as the "Landlord" hereunder upon the same terms and conditions set forth in this Lease.

15.03  Non-Disturbance.  Any grantee of a Mortgage on the Premises (each a "Mortgagee"), and the grantee of any Mortgagee foreclosing on the Premises, and any transferee of the Premises pursuant to a deed in lieu of foreclosure, by accepting such Mortgage or deed, as the

17-32318-maw    Doc 17-2    FILED 08/19/17    ENTERED 08/19/17 01:36:05    Page 7 of 14

case may be, agrees not to terminate this Lease or otherwise disturb the tenancy of Tenant hereunder so long as Tenant is not in default under this Lease.

15.04 <u>Execution of Documents</u>. Tenant agrees to execute documents reasonably required to effectuate an attornment, a subordination, or to make this Lease or any option granted herein subordinate to the lien of any Mortgage; provided the Mortgagee also agrees not to disturb the tenancy of the Tenant hereunder so long as Tenant is not in default under this Lease.

## ARTICLE 16 - QUIET ENJOYMENT

Subject to the terms and conditions of this Lease and conditional upon the performance of all of the provisions to be performed by Tenant hereunder, Landlord agrees to secure to Tenant during the Lease Term and any extensions) thereof, the quiet and peaceful possession of the Premises and all rights and privileges appertaining thereto and under this Lease.

## ARTICLE 17 - SURRENDER OF PREMISES

Except for changes resulting from eminent domain proceedings, at the expiration or sooner termination of the Lease, Tenant shall surrender the Premises in the same condition as the Premises was in upon delivery of possession thereto under this Lease, reasonable wear and tear and casualty excepted.

## ARTICLE 18 – OPTION AND RIGHT OF FIRST REFUSAL TO PURCHASE PROPERTY

18.01 <u>General Grant.</u> For valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Landlord hereby grants to Tenant the exclusive right, privilege, and option to purchase all of the right, title and interest of Landlord in and to the Premises subject to the following terms and conditions:

18.02 <u>Option to Purchase Property ("Option")</u>.

    (a)    This Option, and the rights and privileges of Tenant set forth herein, shall expire concurrently with the expiration or earlier termination of this Lease, as the case may be.

    (b)    Tenant may exercise the Option by giving written notice thereof to Landlord at any time during the term of this Option. Notice of the exercise of the Option shall be given in the manner provided hereinafter. The date that notice to invoke the Option is deemed to be given shall be hereinafter referred to as the "<u>Effective Date</u>".

    (c)    If Tenant fails, during the term of this Option, to exercise this Option, then this Option shall become null, void and of no legal effect whatsoever.

    (d)    If this Option is exercised in the manner set forth herein, then this Option shall be deemed to be a contract for the purchase of the Premises at a purchase price of $660,000.00 (the "<u>Purchase Price</u>"), said contract to be upon the same terms and conditions set forth in this Lease

17-32318-maw    Doc 17-2    FILED 08/19/17    ENTERED 08/19/17 01:36:05    Page 8 of 14

Agreement, with the closing of the same to occur within ninety (90) days of the date that Tenant elects to exercise the Option (the "Closing Date").

18.03 Additional Provisions.

(a) Notice as required with respect to the Option shall be effective when delivered to the parties in accordance with Section 19.03 of this Lease.

(b) Commitment, Survey and Reports. Within thirty (30) days after the Effective Date, Landlord, at Landlord's sole cost and expense, shall deliver or cause to be delivered to Tenant a Commitment for Title Insurance (the "Commitment") covering the Premises, issued by a title company reasonably acceptable to Tenant (the "Title Company"), setting forth the status of the title to the Premises and showing all liens, claims, encumbrances, easements, rights of way, encroachments, reservations, restrictions and any other matters affecting the Premises, which shall commit to delete the standard printed exceptions and the creditors' rights exclusion. Tenant Landlord shall also deliver or caused to be delivered a true, complete and legible copy of all documents referred to in the Commitment, including, but not limited to, deeds, lien instruments, plats, reservations, restrictions and easements (the "Title Documents"). At Tenant's expense, Tenant may also contract for an ALTA survey of the Premises (the "Survey") acceptable to Tenant.

(c) Title Review. Tenant shall have a period of twenty (20) days from the last to be delivered of the Survey, Commitment and Title Documents, in which to review such items and to deliver to Landlord in writing such objections as Tenant may have in regard to any of the items. Any items to which Tenant does not object within such period shall be deemed to be permitted encumbrances (the "Permitted Encumbrances"). If Tenant timely objects to any matter contained in the Commitment, Title Documents or Survey (the "Title Objections") as hereinabove provided, Landlord shall commit to use reasonable efforts to cure such objections, give Tenant notice thereof, and deliver to Tenant a revised Commitment and Survey reflecting such cure. Landlord shall be required to act within ten (10) business days after Landlord's receipt of Tenant's written notice of exercise of the Option (the "Title Cure Period"). If Landlord has not yet satisfied each of Tenant's stated Title Objections within the Title Cure Period, Landlord shall notify Tenant in writing (the "Landlord's Notice") of any of Tenant's Title Objections which Landlord is unable to satisfy. Within ten (10) business days following receipt of Landlord's Notice, Tenant shall elect either to (i) terminate this Option, and neither party shall have any further rights, duties or obligations hereunder, or (ii) purchase the Premises subject to the Title Objections not so removed or cured, in which event those Title Objections shall be deemed to be Permitted Encumbrances. Notwithstanding the foregoing, any lien which is disclosed in the Commitment (including any tax lien or mortgage) shall not be the basis for objection by Tenant but shall be released by Landlord at or before Closing and shall not be a Permitted Encumbrance in the Title Policy or the deed for the Premises. Landlord agrees that it will not voluntarily create any additional encumbrances on the Premises prior to the Closing without the prior written consent of Tenant.

(d) Updated Commitment. After the initial Title Review, Landlord, upon request of Tenant, shall cause Title Company to reissue at the Commitment, prior to Closing. Tenant shall have the right to object to any new exceptions other than the Permitted Encumbrances shown on

any updated Commitment. If Landlord fails to cure such items, Tenant shall again have the right to terminate or waive the objection. The time periods for objecting to and curing the additional exceptions and for terminating this Option shall be the same as those set forth above, commencing with the date Tenant receives the updated Commitment, and, if necessary, Closing Date set for Closing shall be extended for such purposes.

(e) <u>Damage or Destruction of Premises</u>. Risk of physical loss to the real estate and improvements shall be borne by Landlord until closing, provided that if any property covered by this Option shall be substantially damaged or destroyed before this transaction is closed, Tenant may (a) proceed with the transaction and be entitled to all insurance money, if any, payable to Landlord under all policies covering the Premises, or (b) if such damage or destruction occurs after Tenant's exercise of the Option, rescind the exercise thereof and thereby release all parties from liability hereunder by giving written notice to Landlord within ten (10) days after Tenant has written notice of such damage or destruction. Failure by Tenant to so notify Landlord shall constitute an election to proceed with the transaction.

(f) <u>Closing</u>. The closing for the execution and delivery of the deed conveying the Premises and the other documents required to effectuate the sale and purchase transaction and payment of the Purchase Price shall be held at a time and place mutually agreed by the parties or pursuant to a mutually satisfactory escrow (the "<u>Closing</u>") on or before the final Closing Date established above. At the Closing, Landlord shall execute and deliver: (i) a general warranty deed conveying marketable title to the Premises to Tenant (or its designee) in fee simple, subject only to the Permitted Encumbrances; (ii) bills of sale, assignments and other documents necessary to convey all rights held by the owners of the Premises in and to any improvements, abatements, grants, remunerations, tax incentives, beneficial easements and other rights, warranties and other benefits of any kind or nature pertaining to the Premises (the "<u>Associated Rights</u>"); (iii) a final Owner's Policy of Title Insurance that is issued in accordance with Tenant's Title Review of the Commitment; and (iv) any other documents reasonably necessary or appropriate to complete the conveyance and/or assignment of all right, title and interest in and to the Premises and Associated Rights from the owners of the Premises to Tenant or its designee. At the Closing, real estate taxes and assessments for the year of the Closing shall be prorated in accordance with the normal and local customs in which the Premises is situated. Landlord shall pay the conveyance or transfer and recording taxes assessed in relation to the sale of the Premises. Tenant shall pay the charge for recording the deed conveying the Premises. The parties shall each pay one-half of any escrow or closing fees charged in relation to the Closing, and each shall be individually responsible for their own out-of-pocket costs related to the Closing, to include but not be limited to, any attorney's fees.

(g) This Article 18 contains all of the agreements, promises and understanding of the parties hereto with respect to the Option and no oral agreement, promise or understanding of any kind or nature shall be binding as between the parties.

## ARTICLE 19 - GENERAL PROVISIONS

19.01 <u>Estoppel Certificates</u>. Each party ("<u>Responding Party</u>") shall at any time upon not less than ten (10) days' prior written notice from the other party ("<u>Requesting Party</u>") execute, acknowledge, and deliver to the Requesting Party a statement certifying and acknowledging the

17-32318-maw    Doc 17-2    FILED 08/19/17    ENTERED 08/19/17 01:36:05    Page 10 of 14

following: (i) that this Lease represents the entire agreement between Landlord and Tenant, and is unmodified and in full force and effect (or, if modified, stating the nature of such modification and certifying that this Lease, as so modified, is in full force and effect); and (ii) that there are not, to the Responding Party's knowledge, any uncured defaults on the part of the Requesting Party, or specifying such defaults if any are claimed. Any such statement may be conclusively relied upon by any prospective purchaser or encumbrances of the Premises or of the business of the Requesting Party.

19.02 Severability. The invalidity of any provision of this Lease as determined by a court of competent jurisdiction shall in no way affect the validity of any other provision hereof.

19.03 Notices. Any notice required or permitted to be given hereunder shall be in writing and may be given by personal delivery, certified mail, return receipt requested or by nationally recognized overnight courier service and if given personally or by mail or courier service, shall be deemed sufficiently given if addressed to Tenant or to Landlord, as the case may be, at the addresses noted in Article 1 hereof within one (1) day after personal delivery or three (3) days after depositing the same with the U.S. mail or courier service. Either party may by notice to the other specify a different address for notice purposes. A copy of all notices required or permitted to be given to Landlord hereunder shall be concurrently transmitted to such party or parties at such addresses as Landlord may from time to time hereafter designate by notice to Tenant.

19.04 Waiver. No waiver by either party of any provision hereof shall be deemed a waiver of any other provision hereof or of any subsequent breach of the same or any other provision. Either parties' consent to, or approval of, any act shall not be deemed to render unnecessary the obtaining of their consent to or approval of any subsequent act.

19.05 Choice of Law. This Lease shall be governed by, and construed in accordance with, the laws of the State of Ohio, without giving effect to principles regarding conflicts of laws.

19.06 Interpretation. The captions by which the Articles and Sections of this Lease are identified are for convenience only and shall have no effect upon the interpretation of this Lease. Whenever the context so requires, singular numbers shall include the plural, the plural shall refer to the singular, the neuter gender shall include the masculine and feminine genders, and the words "Landlord" and "Tenant" and "person" shall include corporations, partnerships, associations, other legal entities, and individuals.

19.07 Relationship of the Parties. Nothing in this Lease shall create a partnership, joint venture, employment relationship, or any other relationship between Landlord and Tenant other than the relationship of landlord and tenant.

19.08 Successors. This Lease shall be binding upon and inure to the benefit of the parties hereto and their respective personal and legal representatives, heirs, successors, and assigns.

19.09 Modifications. This Lease may not be altered, amended, changed, waived, terminated, or modified in any manner unless the same shall be in writing and signed by or on behalf of the party to be bound.

17-32318-maw    Doc 17-2    FILED 08/19/17    ENTERED 08/19/17 01:36:05    Page 11 of 14

19.10 Brokerage Fees. Landlord and Tenant each represent and warrant that they have not employed a broker in connection with the execution of this Lease. Landlord and Tenant shall each indemnify and hold the other harmless from and against any claim or claims for brokerage or other commissions arising from such party having employed a broker contrary to its representation in this Section.

19.11 Consent. The parties hereto acknowledge and agree that whenever the consent of either is required prior to the taking of any action by the other, such consent shall not be unreasonably withheld or delayed.

19.12 Counterparts. This Lease may be executed in one or more counterparts, each of which shall constitute an original, and all of which shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties Lease to be duly executed and delivered as of the day and year first written above.

[Signature page to follow]

17-32318-maw    Doc 17-2    FILED 08/19/17    ENTERED 08/19/17 01:36:05    Page 12 of 14

**LANDLORD**

Richard McCormick Enterprises LLC, an Ohio limited liability company

By: /s/ _____

Its: _____

STATE OF OHIO )
COUNTY OF Franklin )SS:

The foregoing Lease Agreement was acknowledged before me this _____ day of August, 2016, by John McCormick, as Member of Richard McCormick Enterprises LLC, an Ohio limited liability company, on behalf thereof.

IN WITNESS WHEREOF, I hereunto set my hand.

Nicole R. Lawler
Notary Public, State of Ohio
My Commission Expires 05-09-2020

/s/ Nicole Lawler
Notary Public

**TENANT**

FMI Enterprises, LLC, an
Ohio limited liability company

By: /s/ _____
F. Randolph Sleeper, Manager

STATE OF OHIO )
COUNTY OF FRANKLIN )SS:

The foregoing Lease Agreement was acknowledged before me this _____ day of August, 2016, by F. Randolph Sleeper, as Manager of FMI Enterprises, LLC, an Ohio limited liability company, on behalf thereof.

IN WITNESS WHEREOF, I hereunto set my hand.

Nicole R. Lawler
Notary Public, State of Ohio
My Commission Expires 05-09-2020

/s/ Nicole Lawler
Notary Public

# EXHIBIT A

## DESCRIPTION OF THE PREMISES